

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **VICTORIA JENKINS**, for Justin Jenkins, a minor, | ) ) ) |
| Plaintiff, | ) ) Case No. 07 C 1498 |
| v. | ) ) Magistrate Judge ) Martin C. Ashman |
| **MICHAEL J. ASTRUE**, Commissioner, Social Security Administration, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Victoria Jenkins, on behalf of her son, Justin Jenkins, seeks judicial review of a final decision of Defendant, Michael J. Astrue, Commissioner of the Social Security Administration ("the Commissioner"), finding that Justin ceased to be disabled as of March 2004 and terminating his Supplemental Security Income ("SSI") benefits. Before the Court is Plaintiff's motion for summary judgment. Plaintiff asks the Court to reverse the Commissioner's decision and remand the case to an Administrative Law Judge ("ALJ") for further proceedings. The parties have consented to have this Court conduct any and all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1(c). For the reasons that follow, Plaintiff's motion is denied.

### I. Background

In this case, in which Plaintiff appeals the Commissioner's termination of her son Justin's SSI benefits in 2004, the events that led to the Commissioner's initial determination of disability

in 1995 and continuation of disability benefits in 2000 are not really in dispute, nor are they crucial to the outcome of the motion before the Court. Therefore, the Court will not discuss Justin's voluminous medical record in great detail, but will provide a limited summary of the relevant facts in order to provide context for the events that the ALJ relied on in finding that Justin's disability ended in March 2004.

## A. Medical History Through October 2000

Justin Jenkins was born on June 8, 1989. (R. at 26.) In October 1994, his mother brought him to the emergency room at Loyola Medical Center because he was wheezing and having difficulty breathing. (R. at 174.) Justin was diagnosed by the emergency room doctor as having asthma and admitted to the hospital for treatment. (*Id.*) Between October 1994 and April 1995, Justin made at least five more trips to the hospital emergency room; most of these were prompted by episodes of wheezing and difficulty breathing related to Justin's asthma. (*See* R. at 176-186, 207-09.) By the time Justin was eight years old, he had been admitted to the hospital on ten occasions for asthma treatment, with about half of those visits requiring a stay in the Pediatric Intensive Care Unit. (R. at 252.) A physician who reviewed Justin's record for the Bureau of Disability Determination Services in December 1999 noted that Justin had gone to the emergency room approximately eight times in 1998 and been admitted to the hospital five times, while in 1999 he had been to the emergency room nine or ten times with three hospital admissions. (R. at 287.) In 2000, Justin was admitted to the hospital in April, and received outpatient treatment at the hospital on two other occasions. (R. at 321-22.)

In a Respiratory Report prepared for the Bureau of Disability Determination Services in May 2000, Justin's physician, Dr. Jaggi, noted that Justin's symptoms included nocturnal coughing, chronic wheezing, and episodic asthma attacks lasting an average of twenty minutes that required Justin to rest for approximately thirty to forty minutes before resuming normal activity. (R. at 321.) Dr. Jaggi reported that Justin's symptoms could be triggered by allergens, exercise, respiratory infections, and the surrounding temperature. (*Id.*) He was being treated with albuterol, Flovent, and Serevent, and Dr. Jaggi added treatments with a home nebulizer (a device that transforms liquid medication into a fine mist so that it can be inhaled) to this regimen. (R. at 322.) Dr. Jaggi further recommended that Justin's participation in gym class be reduced in order to avoid exacerbating his asthma. (*Id.*)

## B.    Initial Determination of Disability and Continuation in October 2000

Plaintiff filed for SSI benefits on Justin's behalf in July 1995, alleging that Justin was disabled as a result of his asthma. (R. at 26.) On May 31, 1996, the Social Security Administration ("SSA") found that Justin was disabled as of July 1, 1995. (R. at 29.) This determination was based on a finding that Justin's asthma met the criteria of Childhood Listing 103.03B, which provides for disability when a child experiences asthma attacks "in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year." For the purposes of Childhood Listing 103.03B, "[e]ach inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks."

In April 2000, Justin's case came up for a periodic review. The SSA initially determined that Justin was no longer disabled and that his benefits should be terminated as of June 2000.

- 3 -

(R. at 30.) In October 2000, however, a Disability Hearing Officer revised that determination and found that Justin's asthma continued to meet the criteria of Listing 103.03B. (R. at 31.)

### C.    Medical Evidence Since October 2000

Justin was seen by Dr. Jaggi on November 1, 2000. (R. at 347.) At that time, his peak expiratory flow (a measure of the amount of air a patient can expel from the lungs) was 250, which Dr. Jaggi noted was a decrease from previous measurements in the 300s. (*Id.*) Dr. Jaggi observed that Justin's relatives who lived upstairs from him at the time were smokers and that this environmental factor was likely influencing his asthma. (*Id.*) She recommended adding Singulair to Justin's drug regimen and an appointment with an asthma educator. (*Id.*) Justin visited the hospital as a result of his asthma again on November 21st, and followed up with Dr. Jaggi on December 6th, 2000. (R. at 346.) At that time, Justin's peak expiratory flow was 200. (*Id.*) Dr. Jaggi again noted the likely environmental influence on his asthma. (*Id.*) She noted that Plaintiff had not been giving Justin his Flovent due to confusion over the proper use of his inhalers. (*Id.*) Dr. Jaggi spent twenty minutes educating Plaintiff on Justin's asthma. (*Id.*)

On March 5, 2001, Justin was admitted to the hospital after experiencing difficulty breathing and chest pain which failed to improve after repeated treatments with the home nebulizer. (R. at 358.) The emergency room doctor observed that Justin was wheezing and that he had "very poor air movement." (*Id.*) After two consecutive albuterol and Atrovent treatments failed to improve his condition, Justin was placed on continuous nebulizer treatment in the Pediatric Intensive Care Unit, which stabilized his condition. (R. at 359.) Although Justin visited the emergency room complaining of shortness of breath on October 25, 2001, it appears

that he left without being treated, and his next actual treatment for asthma was not until September 6, 2002, when he was admitted to hospital after home nebulizer treatments failed to relieve his wheezing and chest tightness. (R. at 363, 370.) He improved after continuous nebulizer treatment and was discharged the following day. (R. at 375, 379.)

In February 2003, Justin went to the emergency room complaining of a cough and chest pain, although it is unclear whether this was a result of his asthma, since he was diagnosed with chest wall pain and bronchitis and was treated only with ibuprofen. (R. at 384.) This is the last hospital visit documented in the administrative record. Justin did, however, visit Sinai Medical Group for a physical on July 6, 2003. (R. at 393.) While the doctor's handwritten comments are indecipherable, the doctor did check a series of boxes indicating that Justin's physical examination was normal. (R. at 393-94.)

## D.    Administrative Review and Termination of Benefits

On January 26, 2004, Justin's case came up again for a continuing disability review. (R. at 31.) On March 24, 2004, an agency physician reviewed Justin's medical records, performed a sequential evaluation of Justin's impairment, and found that his condition had improved to the point that he was no longer disabled as of March 2004. (R. at 397-402.) Assessing Justin's abilities in six functional categories, the reviewing physician found that Justin had "no limitation" in "Attending and Completing Tasks," "Interacting and Relating With Others," "Moving About and Manipulating Objects," "Caring for Yourself," and "Acquiring and Using Information." (R. at 398-99.) The physician specifically noted that Justin was ranked 128th out of 916 freshman students and was "tops in his glass [sic]." (R. at 398.) The physician

- 5 -

did find a "less than marked" limitation in Justin's "Health and Physical Well-Being," noting his history of asthma but also observing that he had been treated for his asthma only once in the previous year and that his most recent physical exam was normal. (R. at 399.) The reviewing physician concluded that Justin's asthma was now controlled by his medication. (*Id.*) This determination was then affirmed by another agency physician, who found that Justin's asthma, while severe, did not meet or equal any listing because he had only a less-than-marked limitation in one functional category. (R. at 403-08.)

Justin was then examined by Dr. Harold Song, who performed a Pediatric Evaluation for the Bureau of Disability Determination Services ("DDS") on May 26, 2004. (R. at 409.) Dr. Song noted that Justin's teacher described his learning as "fine," but also reported that his asthma required him to miss school frequently. (*Id.*) Dr. Song observed that Justin had been hospitalized approximately eighty times for his asthma, but that his last hospitalization was in 2003. (*Id.*) He also found that Justin had asthma attacks about seven times per month and that weather was typically a triggering factor. (*Id.*) On physical examination, Justin had good breath sounds, unlabored breathing, and no deformities or retractions of the lungs. (R. at 410.) A pulmonary function study performed that day showed normal spirometry. (R. at 415.)

The DDS also requested information from Justin's school. (R. at 136.) The school social worker indicated that Justin was in regular education classes and had not been referred for special education classes. (R. at 140.) The social worker also indicated that Justin was ranked 128th out of 916 students in his class and that he did not have an unusual degree of absenteeism. (R. at 144-45.) Although he had only met Justin once, the social worker opined that Justin had no problems in five of six functional categories. (R. at 145-49.) In the sixth category, "Health and

Physical Wellbeing," the social worker noted that Justin used a nebulizer and indicated that he did not miss school frequently due to illness. (R. at 150.) Justin's freshman year attendance record, however, indicates that he had between 19 and 23 absences from each class by April 2004. (R. at 158.) The next year's report is difficult to interpret, but it clearly shows numerous instances of absence and tardiness. (R. at 429-30.) Justin's school threatened to remove him for absenteeism, only to relent when Plaintiff provided a doctor's note indicating that Justin's attendance problems were caused by his asthma. (R. at 433-37.) Despite his attendance woes, however, Justin had a cumulative Grade Point Average of 2.857 through his sophomore year. (R. at 436.)

On June 15, 2004, the entire record was reviewed by agency physician E. C. Bone. Dr. Bone found that Justin had no recent history of emergency room treatment or hospitalization for asthma. (R. at 423.) Dr. Bone also concluded that there was no evidence indicating that Justin needed to use steroids to control his asthma. (*Id.*) Dr. Bone found only a less-than-marked limitation in health and physical well being, and no limitations in the other five functional categories. (R. at 420-21.) Because Justin did not have "marked" limitations in at least two categories or an "extreme" limitation in at least one category, Dr. Bone concluded that Justin's impairment did not meet or functionally equal any disability listing. (R. at 423.)

Plaintiff appealed this decision and a hearing was held before a Disability Hearing Officer ("DHO") on September 21, 2004. (R. at 48.) The DHO upheld the determination that Justin's condition had improved and that he was no longer disabled, noting that Justin had not been hospitalized in over two years and that his asthma seemed to be under control as a result of medication and avoidance of respiratory triggers. (R. at 51.) Plaintiff then requested a hearing

before an Administrative Law Judge ("ALJ"). (R. at 60.) A hearing was held on March 16, 2006, before ALJ Robert Senander. (R. at 457.)

## E.    ALJ Hearing Testimony

Justin answered questions posed by the ALJ and his own attorney at the hearing on March 16, 2006. (R. at 459.) He testified that his grades were a mix of A's, B's, and C's, and that he participated in the school choir. (R. at 461-62.) Justin stated that his asthma limited his ability to participate in physical education classes because he had to limit his physical activity in order to avoid having an asthma attack, which he did with the school's approval. (R. at 462-63.) He testified that between the beginning of the school year in August and the hearing in March, he had only attended one or two full weeks of school due to his asthma-related absences. (R. at 466.) Justin explained that about half his absences occurred because he needed to leave school early due to chest pain; the other absences occurred on the day following an attack, while Justin was still recovering. (R. at 466-67.) He added that his asthma interfered with his ability to fully participate in the school choir because, although he wanted to be a singer, he could not always sing as much as he was supposed to. (R. at 468-69.)

With respect to his medications, Justin testified that he used an albuterol inhaler, Serevent, Flovent, and Claritin, adding that these drugs "help a lot when my chest is hurting." (R. at 463-64.) He also testified to using both home and portable nebulizers, stating that he used each nebulizer about three times per week. (R. at 464-65.) The last hospitalization Justin could recall was "a few years" prior to the hearing. (R. at 470.) Justin stated that he normally slept or watched television for four or five hours after school each day before working on his homework

- 8 -

or using the computer. (R. at 468.) Justin testified that he avoided other activities because physical activity and even talking could cause him to experience shortness of breath and other asthma-related problems. (*Id.*) Asked whether he had any allergies, Justin said that he was allergic to "everything," and specified pollen, dust, and a variety of laundry detergents. (R. at 469.) He expressed his belief that his condition was not getting better and frustration that his asthma limited his ability to do things that he wanted to do, such as singing. (R. at 469-70.)

Plaintiff, Justin's mother, also testified before the ALJ regarding the impact of asthma on Justin's life. She testified that the disease affected him mentally as well as physically, because other children would pick on him because he could not participate in sports to the same extent that they could. (R. at 471.) Plaintiff said that Justin missed school frequently, but that he was able to keep his grades up by doing his schoolwork at home and turning it in when he returned to school. (R. at 471-72.) She also testified that Justin's school had threatened to put him in night school because of his frequent absences until she produced a doctor's note indicating that his absences were caused by asthma. (R. at 479.)

With regard to Justin's treatment regimen, Plaintiff testified that she monitored Justin's breathing with a peak flow meter every day, administering albuterol nebulizer treatments if his peak flow dropped below its normal level of 350. (R. at 472-73.) Plaintiff stated that, having dealt with Justin's asthma for so long, she was able to avoid the need to take him to the emergency room. (R. at 474-75.) She testified that Justin's last emergency room trip was in late 2002 or 2003. (R. at 476.) Asked whether Justin's asthma had improved, Plaintiff said that Justin's asthma had not gotten better and was not under control because it still caused him to miss school frequently and forced her to administer treatment on a regular basis. (R. at 477.) Plaintiff

did say, however, that she had been able to "maintain" it with monitoring and treatment. (*Id.*)

She added that she believed her son was disabled because his asthma prevented him from doing

many things that other children his age do: "when a child is 16 years old . . . and he can't play

sports, run, walk . . . that's a disability." (R. at 478.)

## F.    The ALJ's Decision

On April 7, 2006, the ALJ rendered a decision finding that Justin ceased to be disabled as

of March 2004. (R. at 17.) The ALJ based his decision on the following findings:

> 1.  The claimant was born on June 8, 1989, and is currently an adolescent.
>
> 2.  The most recent favorable medical decision finding that the claimant continued to be disabled is the determination dated October 16, 2000. This is known as the "comparison point decision" or CPD.
>
> 3.  At the time of the CPD, the claimant had the following medically determinable impairment: asthma. This impairment was found to meet section 103.03B of 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4.  The medical evidence establishes that the claimant did not develop any additional impairments after the CPD through March 2004. Thus, the claimant continued to have the same impairment that he had at the time of the CPD.
>
> 5.  As of March 2004, the claimant did not have an impairment or combination of impairments which met or medically equaled or functionally equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 6.  Medical improvement occurred as of March 2004.
>
> 7.  The claimant has the following severe impairment: asthma.
>
> 8.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

> 9. The claimant does not have an impairment or combination of impairments that functionally equals the listings.
>
> 10. The claimant's disability ended as of March 2004.

(R. at 11-17 (citations omitted, emphases in original).) In support of his conclusion that Justin's asthma did not functionally equal any of the listings, the ALJ found that Justin had less-than-marked limitations in "Attending and Completing Tasks," "Interacting and Relating With Others," and "Health and Physical Well-Being," and no limitations in any of the other three functional categories. (R. at 13-17.) The ALJ's decision became the final decision of the Commissioner on January 29, 2007, when the SSA's Appeals Council denied Plaintiff's request for review. (R. at 4-6.) Plaintiff now appeals the Commissioner's decision in this Court.

## II. Discussion

### A. Standard of Review

This Court will uphold the ALJ's decision "if it is supported by substantial evidence and is free of legal error." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (citing 42 U.S.C. §405 (g)). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision under the substantial evidence standard, this Court will not reweigh the evidence or substitute its judgment for the judgment of the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). However, this Court will not act as a "rubber stamp" for the Commissioner's decision. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Rather, this Court must ensure that the ALJ has articulated his analysis of the case at some minimal level. *Dixon v. Massanari*,

270 F.3d 1171, 1176 (7th Cir. 2001). This means that the ALJ's decision must build "an accurate and logical bridge from the evidence to [his] conclusion." *Steele*, 290 F.3d at 941. It also requires that the ALJ "confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002). If the ALJ's decision does not meet these minimum requirements because the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," this Court will reverse and remand the decision. *Steele*, 290 F.3d at 940.

## B. Standard for Disability in Children

A claimant who is under the age of eighteen "shall be considered disabled if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Code of Federal Regulations mandates a three-step inquiry in determining whether a child is disabled. First, the reviewer asks whether the child is engaged in substantial gainful activity; a child who is gainfully employed is not disabled. 20 C.F.R. 416.924(b). Next, the child must have a medically determinable impairment that is "severe," meaning that it causes more than "minimal functional limitations." 20 C.F.R. 416.924(c). Finally, the child's impairment must meet, medically equal, or functionally equal the severity of a listed impairment. 20 C.F.R. 416.924(d). An impairment is "functionally equal" to a listed impairment when it causes "marked" limitations in two of the functional categories listed in 20 C.F.R. 416.926a or an "extreme" limitation in one functional category. 20 C.F.R. 416.926a(a).

Once the SSA has determined that a child is disabled, the child's case is reviewed periodically to determine whether the child is still disabled. 20 C.F.R. 416.994a(a). The reviewer first considers whether there has been a medical improvement, defined as "any decrease in the medical severity of [the impairment] which was present at the time of the most recent favorable decision that [the child was] disabled." 20 C.F.R. 416.994a(a)(1); 20 C.F.R. 416.994a(c). If there has been medical improvement, the child will still be disabled if the impairment still meets or equals the same listing that it met or equaled at the time of the last finding of disability. 20 C.F.R. 416.994a(a)(1). If the impairment no longer meets or equals the listing that it met or equaled when the child was last determined to be disabled, the reviewer considers whether the child is disabled according to the three-part inquiry used in the initial disability determination. *Id.*

## C. Analysis

Plaintiff challenges the ALJ's decision on four grounds. First, she argues that the ALJ committed reversible error by failing to apply the proper legal standard in determining whether Justin continued to be disabled. (Pl.'s Br., Mot. for Summary Judgment, at 12.) Next, Plaintiff argues that the ALJ's decision must be reversed because the ALJ failed to articulate the reasons for his finding that Plaintiff's and Justin's testimony was not entirely credible. (*Id.* at 13.) Plaintiff then argues that the case must be remanded because the ALJ failed to call a medical expert to testify at the hearing on March 16, 2006. (*Id.* at 14.) Finally, Plaintiff argues that the Commissioner's decision is not supported by substantial evidence. (Pl.'s Reply, Mot. for Summary Judgment, at 8-10.) The Court addresses these arguments in turn.

1.    Failure to Apply the Proper Legal Standard

Plaintiff argues that the ALJ's decision must be reversed because the ALJ did not cite the governing legal standard applicable to medical improvement cases, did not document the specific steps that led to his decision as required by 20 C.F.R. 416.994a(b), and failed to apply the correct standard in determining that Justin was no longer disabled. The Court treats these as two separate, though related, lines of argument, one taking issue with the ALJ's articulation of his reasoning and the other attacking the substantive rule he applied. Neither argument is persuasive.

Seventh Circuit case law makes clear that a reviewing court must give an ALJ's decision a "commonsensical reading rather than nitpicking at it." *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999). For this reason, the Seventh Circuit has held repeatedly that the failure to explicitly cite the applicable rule or regulation is not necessarily fatal to the ALJ's decision, so long as the decision is substantively sound and the ALJ's articulation of his reasons is not merely perfunctory. *See, e.g., Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Steele*, 290 F.3d at 940. In other words, failure to cite the proper regulation is only grounds for reversal when coupled with a superficial analysis of the facts that "frustrates any attempt at judicial review." Of course, if the ALJ has applied the wrong rule, the Court will reverse regardless of whether the rule is properly cited. *See Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997) (reversal is appropriate where an ALJ's decision is not supported by substantial evidence or is based on a legal error).

In this case, Plaintiff is correct that the ALJ's decision does not cite 20 C.F.R. 416.994a(b), which provides an overview of the continuing disability evaluation process for

children. The ALJ did cite a regulation that contains the medical improvement standard for adults, 20 C.F.R. 416.994(b)(1)(i). This error strikes the Court as less grave than a complete failure to cite any regulation at all. First, it could be a mere typographical mistake, as the regulation defining the standard applicable to adults is only separated by a keystroke or two from the regulation applicable to children (20 C.F.R. 416.994(b)(1)(i) vs. 20 C.F.R. 416.994a(c)). Furthermore, a comparison of the two sections reveals that the definition of "medical improvement" is the same for adults as it is for children, namely, "any decrease in the medical severity of your impairment(s) which was present at the time of your most recent favorable decision that you were disabled or continued to be disabled." Because the citations are so close—both typographically and substantively—it makes little sense, in light of the Seventh Circuit's insistence on a "commonsensical" approach, to make a mountain out of this molehill.

In any event, the ALJ's failure to cite the exact section that Plaintiff believes he should have is of little consequence because the ALJ applied the proper rule and supported his findings with a non-perfunctory analysis. As required by 20 C.F.R. 416.994a(a)(1), the ALJ considered whether there had been a medical improvement in Justin's impairment. (R. at 11-12.) In support of his finding that Justin's condition had improved, the ALJ discussed Justin's record of hospitalization and emergency room treatment, the results of his pediatric consultative examination and pulmonary function study, his testimony regarding the effectiveness of his medications, and his performance in school. (R. at 12.) The ALJ also determined that Justin's impairment at the time of his last favorable determination was asthma, and that asthma continued to be Justin's only impairment. (R. at 11.) Finally, the ALJ analyzed the evidence in the record and determined that Justin's impairment no longer met or functionally equaled the listing for

asthma or any other impairment. (R. at 11-12.) In reaching this conclusion, the ALJ evaluated the evidence to determine Justin's abilities in each of the six prescribed functional categories. (R. at 12-17.)

Because the steps in the ALJ's discussion mirror the steps required by 20 C.F.R. 416.994a for the evaluation of continuing disability in children, the Court is convinced that the ALJ applied the correct legal standard in spite of his failure to cite it explicitly. As required by 20 C.F.R. 416.994a, he assessed whether Justin's medical condition had improved and whether it met or equaled the listing it had previously met or equaled or any other listing. Furthermore, at each stage in the inquiry the ALJ supported his findings with references to facts in the record, including hearing testimony and school and medical records, building "an accurate and logical bridge from the evidence to [his] conclusion." *Steele*, 290 F.3d at 941. Because there was no legal error, and the ALJ's mistake in citing to the wrong portion of 20 C.F.R. 416.994 was not accompanied by a perfunctory analysis, the Court finds no grounds for reversal.

### 2. Credibility Determination

Plaintiff also argues that the ALJ's decision must be reversed because of the ALJ's determination that Plaintiff's and Justin's hearing testimony was "not entirely credible." (R. at 13.) Specifically, she argues that the ALJ committed reversible error by failing to articulate specific reasons for his credibility finding. (Pl.'s Br., Mot. for Summary Judgment, at 13.) The Court finds that the ALJ adequately explained his determination that some aspects of Plaintiff's and Justin's testimony were not credible.

- 16 -

Social Security Ruling ("SSR") 96-7p provides that an ALJ must give "specific reasons for the finding on credibility," and that the reasons given "must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Applying this ruling, the Seventh Circuit has held that it is insufficient for an ALJ to "imply" the reasons for a credibility determination; the reasons must be explicit so that a reviewing court "will have a fair sense of the weight given to the applicant's testimony." *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003).

In this case, the ALJ did not completely discredit Plaintiff's and Justin's testimony. He specifically found that "the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms." (R. at 13.) This is significant because Plaintiff's brief focuses on hearing testimony regarding the frequency and duration of Justin's attacks, the treatment he received at home from his mother, and his numerous absences from school. It is not this testimony, but rather the testimony regarding the impact of these events on Justin that the ALJ rejected, and in doing so, he provided specific reasons. For example, in finding that Justin had a "less than marked limitation in interacting and relating with others," the ALJ contrasted Plaintiff's testimony that Justin was teased by other children because he could not play sports with school records indicating that he had no problems interacting with other children. (R. at 15.) While he noted Justin's testimony that his condition had not improved, the ALJ also observed that Justin said his medications helped him and that he was aware of certain triggers he could avoid. (R. at 12.) To the extent that Justin's testimony regarding his frequent absences implied that his asthma had a severe effect on his schoolwork and his ability to complete tasks,

the ALJ contrasted this with Justin's above-average grades and a teacher's statement that he had "no problems attending and completing tasks." (R. at 14.)

Reviewing the opinion as a whole, the Court concludes that the ALJ accepted most of the witnesses' testimony. The ALJ did not deny that Justin had asthma attacks or that these attacks caused him to miss school frequently. The ALJ credited Plaintiff's testimony regarding the treatments she administered. The only testimony the ALJ rejected was testimony regarding the impact of Justin's asthma on his ability to function in various categories—which the ALJ contrasted with evidence from the record—and Plaintiff's statement that her son's impairment was a disability, which is a legal conclusion that the ALJ was, of course, free to reject.[1] Because the ALJ articulated specific reasons for rejecting those aspects of the witnesses' testimony that he did not credit, he satisfied the requirements of SSR 96-7p.

### 3. Failure to Call a Medical Expert

Plaintiff next argues that the case must be remanded because the ALJ failed to call a medical expert and instead succumbed to "the temptation to play doctor," which is grounds for reversal. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (ALJs may not improperly substitute their own medical judgment for the judgment of a physician). The Court disagrees.

Plaintiff is correct that only qualified medical advisors may give opinions. *See Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985). However, the Court finds that the ALJ did not

---

[1] While the ALJ's decision states that "the statements concerning the intensity, *duration* and limiting effects of the claimant's symptoms are not entirely credible," the Court finds no indication in the rest of the decision that the ALJ actually disagreed with Justin's statements about the duration of his symptoms or based his determination on the duration of Justin's symptoms in any way. (R. at 13 (emphasis added).)

provide an improper medical opinion in this case. Plaintiff appears to take issue with the ALJ's conclusion that Justin's asthma was not disabling because it did not meet or equal a listed impairment. (Pl.'s Br., Mot. for Summary Judgment, at 15.) What Plaintiff overlooks is that, to the extent that this is a medical rather than a legal conclusion, it is not the ALJ's opinion but the opinion of the agency physicians who evaluated and reviewed Justin's case. The ALJ refers to this evaluation several times in his decision. (R. at 13, 14, 17.) In fact, where the ALJ's opinion deviates from that of the reviewing physicians, it is actually more favorable to Plaintiff, finding limitations in three categories where the physicians found limitations in only one. (R. at 13-17, 398-99.) In any event, it is appropriate for an ALJ to rely on the opinion of "a physician designated . . . to determine medical equivalence." *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990). Therefore, the ALJ did not rely on his own improper medical opinion.

Furthermore, the ALJ did not commit reversible error by failing to call a medical expert to testify at the hearing. Where the evidence in the record is sufficient for the ALJ determine whether a claimant is disabled, the ALJ need not gather additional information. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("Here, the evidence was adequate for the ALJ to find Skarbek not disabled, and the ALJ acted within his discretion in deciding not to call a medical expert."). Plaintiff identifies three topics as to which she believes additional expert testimony was necessary: the difference between home and hospital nebulizers; whether a normal pulmonary function test is meaningful within the context of an episodic impairment; and whether multiple nebulizer treatments, asthma attacks, and absences from school meet or equal a listed impairment. (Pl.'s Br., Mot. for Summary Judgment, at 15.) With respect to the first topic—the difference between home and hospital nebulizer treatments—Plaintiff makes no showing that

information regarding this distinction is even relevant, let alone necessary in order for the ALJ to render a decision. The remaining topics—the significance of Justin's normal pulmonary function test and the equivalency between Justin's symptoms and the listed impairments—were already the subject of expert testimony because the reviewing physicians considered them in finding that Justin's condition had improved and his impairment no longer met or equaled a listed impairment. Because the ALJ had adequate information before him to make a decision without soliciting additional medical opinions, he was not required to call a medical expert.

### 4.     Sufficiency of the Evidence

Finally, Plaintiff argues in her reply brief that the ALJ's decision must be reversed because it was not supported by substantial evidence. (Pl.'s Reply, Mot. for Summary Judgment, at 8-10.) The Commissioner contends that this argument was waived when Plaintiff failed to raise it in her original motion for review. (Def.'s Br. at 10.) It is not necessary for the Court to determine whether the argument was waived because it is entirely without merit.

As discussed above, this Court reviews the decision of the ALJ deferentially and will overturn it only if the ALJ has made an error of law or his decision is not supported by substantial evidence. *Steele,* 290 F.3d at 940. "Evidence is considered substantial if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart,* 374 F.3d 470, 473 (7th Cir. 2004). Here, the ALJ's decision that Justin was no longer disabled was supported by the findings of agency physicians and the consultative examination of Dr. Song. (R. at 396-417.) The ALJ was entitled to rely on these opinions, especially since Plaintiff presented no medical opinion to contradict these findings. Evidence that Justin was able to

succeed in school despite his asthma and Justin's own testimony suggesting that his asthma was at least controlled by medication and avoidance of triggering factors also supports the ALJ's conclusion. Finally, there is the undisputed evidence that Justin's trips to the hospital had tapered off, with his last visit in 2003, approximately three years prior to the hearing. A reasonable person would accept this evidence as adequate to support a finding that Justin's condition had improved and that he was no longer disabled; no substantial evidence supports any other conclusion. Therefore, the Court finds that the ALJ's decision must be upheld.

### III. Conclusion

For the reasons set forth above, the decision of the Commissioner finding that Justin Jenkins ceased to be disabled as of March 2004 and terminating SSI benefits is affirmed.

**ENTER ORDER:**

**MARTIN C. ASHMAN**

Dated: January 14, 2008.                    United States Magistrate Judge